UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GERALDINE BELL,

        Plaintiff,                     CIVIL ACTION NO. 06-14052

        v.                               DISTRICT JUDGE STEPHEN J. MURPHY III

AMERITECH SICKNESS AND        MAGISTRATE JUDGE VIRGINIA MORGAN
ACCIDENT DISABILITY BENEFIT
PLAN,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

In this civil action, plaintiff challenges the denial of six weeks of short term disability benefits under her employer's ERISA plan. Before the court are cross motions for entry of judgment on the pleadings/ administrative record (#32, 33) regarding plaintiff's claim for benefits under Ameritech's Sickness and Accident Disability Plan, which is governed by ERISA 29 U.S.C. §1001 et seq. Plaintiff received short term disability benefits under the Plan from April 13, 2005 through June 12, 2005. Plaintiff returned to work on or about August 29, 2005. At issue is whether the Plan arbitrarily and capriciously denied short term disability benefits to the plaintiff for the period June 13 to August 29, 2005. Oral argument was held before the magistrate judge. For the reasons discussed in this report, it is recommended that the defendant's

motion be granted, plaintiff's motion denied, and the decision denying disability benefits be affirmed.

**A. Background**

Plaintiff is an employee of Michigan Bell[1] and is covered by her employer's Sickness and Accident Disability Plan, an employee benefit plan governed by ERISA. She is employed as a Telecommunications Specialist, a sedentary job that involves working at a desk with a computer and talking on the phone. (AR 77)[2] Plaintiff was injured in a motor vehicle accident on or about April 5, 2005, and applied for benefits under the Plan. She was initially approved, and received disability benefits from April 13, 2005, through June 12, 2005. Her benefits were then discontinued. Plaintiff alleges that she should have received benefits from June 13, 2005, through August 29, 2005; defendants submit the total cash value of those benefits is $14,420.56, exclusive of interest. The Plan provides discretionary authority in the Plan Committee and thus, judicial review is pursuant to an arbitrary and capricious standard. *Firestone Tire and Rubber v. Bruch*, 489 U.S. 101 (1989). Plaintiff submits that the Plan arbitrarily changed its approval of her benefits without finding any change in her condition. Defendant submits that it did not act arbitrarily and capriciously because an orthopedic surgeon and Board Certified experts in Psychiatry, Neurology, and Internal Medicine concluded that there were no objective findings in

---

[1] Plaintiff began working at Michigan Bell on October 18, 1973. At the time of the accident she had worked for 31 years. She has now returned to work and has worked for the company over 34 years.

[2] The Administrative Record (AR) is filed as D/E 16 and is referenced by page numbers.

support of plaintiff's claim that she continued to be unable to perform the functions of her sedentary job.

**B.  ERISA**

Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts.'"  Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004), quoting 29 U.S.C. §1001(b) (2000).  Where a person or entity breaches fiduciary obligations under ERISA, a civil action may be brought by a participant under ERISA §502(a)(1)(B) to recover benefits due him, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits.  In addition, a civil action may also be brought by a participant under §502(a)(3)(B) to obtain other appropriate equitable relief to address violations of the statute or terms of the Plan and /or to enforce any provisions of the statute or terms of the Plan.  See, Varity Corp. v. Howe, 516 U.S. 489, 515 (1996).

Where a claim involving an Employee Benefit Plan is brought under the civil enforcement provisions of ERISA, it is regarded as arising under federal law.  The courts have been directed to develop substantive federal common law as necessary to interpret ERISA and fashion remedies to effectuate the policies underlying ERISA.  29 U.S.C. § 1132(a); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109-110 (1989).  ERISA generally preempts all state laws that relate to Employee Benefit Plans.  29 U.S.C. § 1144(a).

With one exception, federal district courts have exclusive jurisdiction over civil actions brought under ERISA, including claims alleging breach of fiduciary duty, claims requesting equitable relief, other than benefit claims and claims involving statutory penalties under ERISA. 29 U.S.C. § 1132(e)(1). The exception applies to civil actions brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the terms of the Plan, enforce rights under the terms of the Plan, or clarify the participant's rights to future benefits under the Plan. When the exception applies, federal and state courts have concurrent jurisdiction. 29 U.S.C. § 1132(e)(1). The amount in controversy or the citizenship of the parties is irrelevant. 29 U.S.C. § 1132(f).

**C. ERISA Standard of Review**

While ERISA governs the Employee Benefit Plan in general, whether a claimant is entitled to disability benefits is determined by the language set forth in the individual Plan. The United States Supreme Court held in Firestone Tire & Rubber Co. v. Bruch that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. Where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the more deferential arbitrary and capricious standard of review is appropriate. Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). Thus, a reviewing court should first examine the Plan to determine whether defendant is a Plan administrator or fiduciary, and whether the required discretion has been given. Federal common law rules of contract interpretation apply to ERISA Plans and those rules dictate that this Court

interpret the Plan's provisions according to their plain meaning and in their ordinary and popular sense.  Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998).  Here, the parties agree that the arbitrary and capricious standard of review applies.

## D.  JUDICIAL REVIEW OF ERISA CLAIMS

In reviewing a denial of benefits under an ERISA plan, the court is limited to a review of the evidence that was before the plan administrator when the final decision to deny benefits was made.  *Wilkens v. Baptist Healthcare System*, 150 F.3d 609, 619 (6th Cir. 1998), *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990), *Eriksen v. Metropolitan Life Insurance,* 39 F. Supp. 2d 864, 865 (E.D. MI 1999).  Under the arbitrary and capricious standard of review, the decision of the ERISA benefit plan administrator denying or granting benefits is not subject to reversal if it is reasonable in light of the plan's provisions.  *Davis v. Kentucky Finance Co. Retirement Plan*, 887 F.2d 689, 694-95 (6th Cir. 1989), cert. denied 495 U.S. 905 (1990) (as long as the decision has some rationale or reasonable basis, it must be upheld).

## E.  PLAINTIFF'S CASE

Plaintiff was injured in an automobile accident on I-94, and as a result, was off work from April 5, 2005, to August 29, 2005.  A tractor-trailer semi entered the freeway and blew a tire, causing the trailer to swerve.  It locked against the vehicle plaintiff was driving and dragged her, out of control, for almost a mile.  The truck finally came to a stop, smashing plaintiff's car between the freeway median and the trailer.  (AR 161, 306)

She was examined the next day by her physician Dr. Brown who diagnosed cervical whiplash, lumbar spine trauma, migraine headache and sprain of both hands.  (AR 307, 197)

After the required seven day waiting period, plaintiff applied for and was granted short term disability benefits under the Plan's grace period which permits three weeks for submission of medical documentation. (AR 317, 322) On May 2, 2005, Dr. Brown faxed his treatment notes to the Plan. Based on those notes, plaintiff was approved for benefits from April 13, 2005, through May 22, 2005. (AR 301-309) The letter indicated by implication that she was expected to recover within that period of time. If she did not, then it was her responsibility to ensure that chart notes, diagnostic test result, hospital discharge summaries etc. were provided in a timely manner. (AR 301) On May 23, 2005, in a similar letter, plaintiff was advised that she would receive benefits through June 12, 2005. (AR 300)

On June 16, 2005, the Plan told plaintiff that it had not received any updated medical records since May 18, 2005, and that she would therefore be ineligible for any further benefits. The next day, Dr. Brown faxed additional records showing that plaintiff continued to receive physical therapy. (AR 288-293) On June 21, 2005, plaintiff was advised of the termination of benefits and her right to appeal. (AR 285)

On June 28, 2005, Dr. Brown faxed additional progress notes. (AR 277-284) He stated that plaintiff received a head injury with cognitive consequences, including short attention span, and that she had hand numbness and could only ambulate for a very short period of time. In his opinion, she was totally incapacitated. (AR 279-80) On June 29, 2005, the Plan denied plaintiff's claim for further benefits. On July 13, 2005, Dr. Sudhir Lingnurkar provided records to the Plan which showed that he diagnosed plaintiff with PTSD (post traumatic stress disorder) from the accident and assessed her ability to function as "fair." (AR 266) Symptoms included

sleep difficulty and anxiety while driving. She was prescribed anti-anxiety and anti-depressant medication. (AR 267-271) The work restrictions of May 17, 2005, imposed by Dr. Brown indicate that she should do no bending, lifting, twisting, or carrying greater than 5 pounds. Dr. Brown also noted that plaintiff had no grasp, squeeze, or carry of the right and limited grasp, squeeze and carry of the left hand. (AR 278) On July 18, 2005, the plan advised her that her benefit denial would stand. (AR 252) On July 18, 2005, plaintiff had an MRI which showed focal disc extrusion at C5-C6, but without impingement on the cord. The MRI of the lumbar spine was normal. (AR 244)

On August 8, 2005, plaintiff filed an appeal. She stated that she was still very much in pain with her hands, back, and neck. The medication she took also made her sleepy. (AR 232) On August 12, 2005, Dr. Brown sent a letter saying that plaintiff was totally incapacitated. On August 24, 2005, Dr. Lingnurkar sent a letter indicating that plaintiff was totally disabled, and assessing her GAF score as only 35.[3] (AR 224) On August 29, 2005, plaintiff returned to work.

The Plan provided plaintiff's records for review by medical experts. Plaintiff's psychiatric records were reviewed by Dr. Irwin Greenberg, a Board Certified psychiatrist. In his report, he reviewed the records of Dr. Brown and Dr. Lingnurkar and summarized them. He noted that there were no objective findings of psychiatric disorder in the available documentation between June 13, 2005 and September 6, 2005. (AR 212) The only clinical psychiatric findings noted in the documentation include complaints of anxiety, flashbacks, and some hopelessness,

---

[3]Generally, such a GAF indicates some impairment in reality testing or communication, or major impairment in several areas such as work or school, family relations, judgment, thinking or mood.

and a feeling that "the truck is crushing her" resulting in avoidance of getting near a car. No objective signs of psychiatric disorder were observed. (AR 213) The absence of objective findings of psychiatric disorder subsequent to June 13, 2005 result in an absence of support for the presence of functional impairments or inability to perform job duties induced by such disorder. (AR 214)

Dr. Jeffery Been, orthopedic surgeon, opined that based on the objective documentation plaintiff would not be temporarily or totally disabled from her job from an orthopedic standpoint. She had co-morbidities of headaches and post-traumatic stress disorder which he could not comment on. However, from an orthopedic standpoint, she had cervical and lumbar strain, but the pathogenesis of the hand numbness is uncertain based on the objective information. (AR 207)

Similarly, board certified neurologist Dr. Joseph Jares III noted that plaintiff had been diagnosed with soft tissue injuries and PTSD. However, there was insufficient evidence of a severe cognitive disorder which would preclude sedentary work. The cognitive dysfunction was not supported from a neurological perspective. (AR 204) The cervical spine MRI findings are reported to be mild and may be seen in asymptomatic individual. They do not necessarily reflect her trauma. The EMG study performed by Dr. Awerbuch was normal. Dr. Gaston did not document a neurologic examination. (AR 203)

Board Certified internist Dr. Leonard Sonne stated that plaintiff had multiple complaints of neck, back, hands, and wrist grasp. However, the lumbar MRI was normal as were the EMG and nerve conduction studies. Plaintiff's cervical MRI was abnormal and showed a central disc

extrusion at the C5-6 level. (AR 244) The reviewing physician noted that there was no foraminal narrowing or impingement. She did not have carpal tunnel syndrome. (AR 198) He also noted that the clinical findings were not consistent with her complaints of inability to function. Dr. Sonne concluded that from an internal medicine point of view, she was capable of performing her regular sedentary job. (AR 198)

Plaintiff contends that she was still having pain, migraine headaches, and was not able to return to work until August, 2005. She submits that the decision of the plan was arbitrary and capricious.

The Ameritech Plan provides that disability shall mean "sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee form performing the duties of his/her last Company or Participating Company assigned job with or without reasonable accommodation . . . or any other job assigned by the Company . . . for which the Eligible Employee is qualified with or without reasonable accommodation." (Section 2.4) Here, the defendant submits that there was not objective documentation supporting disability beyond June 12, 2005. Plaintiff's job required her to sit, use a computer and talk on the phone. She had soft tissue injuries and mental anxiety but no evidence precluding her work. Her physician only restricted her from bending, lifting, twisting, or carrying objects more than five pounds. This did not preclude her job duties.

Plaintiff's objective tests-- EMG, nerve conduction studies, and MRIs–were normal, except for the cervical MRI. No physician opined that this abnormal MRI would preclude her ability to function at her job. Even with respect to her psychiatric examination, no mention is

made at the time of the examination that she was disabled.  The reviewer found no symptoms or conclusion of the examiner which were supported by objective findings of a psychiatric disorder.

It should be noted that unlike social security reviews, there is no requirement that the ERISA provider give substantial weight to the opinion of the treating physician.  However, even if that were the case, Dr. Brown's conclusion of total disability is not consistent with his own restrictions of limitations on bending, carrying, lifting, and twisting which would permitted performance of plaintiff's sedentary work.  Plaintiff was advised that she must submit objective medical evidence to support a continuation in her benefits.  The evidence of MRIs, EMG, and nerve conduction studies were not supportive of her claim.  There is no showing that she was unaware of the requirement or that the reviewers were less than objective.

Therefore, it is recommended that defendant's motion for judgment on the pleadings be granted, plaintiff's motion be denied, and the decision denying a continuation of benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: November 21, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 21, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan